USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/3/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
    ANDRE GERARD,
                              Plaintiff,

            -against-

    THE CITY OF NEW YORK, et al.,
                              Defendants.
------------------------------------------------------------ X

17 Civ. 8076 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Pro se Plaintiff Andre Gerard brings this action against the City of New York and New York City Police Department Detective Michael Bia pursuant to 42 U.S.C. § 1983, alleging that Bia forced him to shave his religious beard at gunpoint, in violation of his constitutional rights.[1] Plaintiff also brings a state claim for intentional infliction of emotional distress. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendants' motion is granted.

**I.    BACKGROUND**

      The facts below are drawn from the record and are construed in favor of Plaintiff as the nonmoving party. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017).

---

[1] Plaintiff asserts various constitutional claims under the First, Fourth, Eighth and Fourteenth Amendments. Interpreting Plaintiff's arguments to raise the strongest arguments they suggest, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), Plaintiff has raised excessive force and deliberate indifference claims under the Fourteenth Amendment's Due Process Clause, claims under the First Amendment's Free Exercise Clause and claims under the Fourteenth Amendment's Equal Protection Clause.

In the early 1990s, Plaintiff converted to Islam and grew a religious beard. Because of ingrown hairs and skin infections, Plaintiff periodically trimmed his beard or shaved it off altogether.

On February 17, 2016, Plaintiff was arrested by the New York City Police Department and charged with various criminal offenses. At the time of his arrest, Plaintiff did not have any facial hair.

On April 14, 2016, Defendant Bia and Assistant District Attorney Joseph Giovanetti filed a motion in the Supreme Court of the State of New York, County of New York, seeking to include Plaintiff in a line-up related to a 2015 robbery. On April 14, 2016, Justice Neil Ross issued an order requiring Plaintiff to participate in a line-up on April 20, 2016.

On April 20, 2016, Bia directed Plaintiff to shave his beard for the line-up. Plaintiff contends that, at this time, Bia and Giovanetti made highly offensive racist comments towards Plaintiff and denigrated Islam, calling it a "terrorist religion." When Plaintiff refused to shave his beard, the line-up was cancelled.

On April 28, 2016, Bia and Giovanetti sought a second line-up order in the New York Supreme Court, and requested that Plaintiff be ordered to remove his beard "so that [Plaintiff] appears in the line-ups in reasonably the same condition as the perpetrator of the [2015] crimes." On May 9, 2016, Justice Ross issued an order requiring Plaintiff to participate in three line-ups on May 11, 2016, and directing Plaintiff to "remove his beard and any other facial hair prior to his appearance in the line-ups and otherwise not disguise his appearance in any way that would change it from the time of arrest."

On May 11, 2016, prior to the line-ups, Bia directed Plaintiff to remove his beard. Plaintiff refused, citing his religious beliefs. At his deposition, Plaintiff testified that after he

2

repeatedly refused Bia's orders to shave, Bia pulled out a firearm and told Plaintiff that if he did not shave, he was "going to shoot [his] black ass." Plaintiff also testified that Giovanetti told Bia to "make [Plaintiff] shave his Muslim terrorist beard off."

Under duress, Plaintiff complied with the order to shave. According to Plaintiff, he was handed a shaving razor that was rusted and appeared to have been previously used. While shaving, Plaintiff accidentally cut his face. Plaintiff contends that the cuts caused him to bleed profusely, and that he was in extreme physical and emotional pain.

Plaintiff testified that he requested medical treatment from Bia both before and after the line-ups, but Bia refused. The following morning, Plaintiff was seen by medical staff at Riker's Island. According to a report prepared by the attending doctor, Plaintiff was diagnosed with two "superficial scratches" on the left side of his face and was prescribed Ibuprofen and given an adhesive bandage. Plaintiff testified that as a result of the cuts, he has two permanent marks on the left side of his face.

## II. STANDARD

Summary judgment is appropriate if the record establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The evidence is construed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in the nonmoving party's favor. *See id.*

Where, as here, a party appears pro se, a court must construe "the submissions of a *pro se* litigant . . . liberally" and interpret them "to raise the strongest arguments that they *suggest*."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted) (emphasis in original) (collecting cases); *accord Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015). Pro se status does not, however, "relieve [a non-movant] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted); *accord O'Callaghan v. Uber Corp. of Cal.*, No. 17 Civ. 2094, 2018 WL 3302179, at *5 (S.D.N.Y. July 5, 2018).

## III. DISCUSSION

### A. Excessive Force

Summary judgment is granted on the excessive force claim because Bia's conduct is protected under the doctrine of qualified immunity. "Government officials performing discretionary functions generally are afforded qualified immunity, and are therefore 'shielded from liability for civil damages' when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Reyes v. Fischer*, No. 17-1970, 2019 WL 3755664, at *4 (2d Cir. Aug. 9, 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity thus protects all but the plainly incompetent and those who knowingly violate the law." *Naumovski v. Norris*, 2019 WL 3770193, at *4 (2d Cir. Aug. 12, 2019) (internal quotation marks omitted) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

"A government official is entitled to immunity from suit whenever (1) his conduct "did not violate clearly established law," or (2) "it was objectively reasonable for [the official] to believe that his action did not violate such law." *Naumovski,* 2019 WL 3770193, at *4. Thus,"[t]he issues on qualified immunity are: (1) whether plaintiff has shown facts making out a

4

violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013); *accord Falls v. Rude*, No. 17 Civ. 1339, 2019 WL 3715087, at *7 (S.D.N.Y. Aug. 7, 2019). Answering any of these issues in the negative means that the official is shielded by qualified immunity and entitled to summary judgment. *Naumovski,* 2019 WL 3770193, at *5. These questions may be considered in any order. *See id*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although it was disproportionate and unreasonable for Bia to brandish a firearm and threaten to shoot Plaintiff if he didn't shave, qualified immunity applies because the law is not clearly established that Bia's conduct amounted to a constitutional violation of excessive force. "[C]learly established law must be 'particularized' to the facts of the case and must not be defined 'at a high level of generality.' In other words, officials only forfeit their immunity when 'existing precedent . . . [has] placed the statutory or constitutional question beyond debate' and that precedent has been recognized 'under similar circumstances.'" *Naumovski*, 2019 WL 3770193, at *4 (quoting *White*, 137 S. Ct. at 552, and *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). To find that the law was "clearly established" requires identifying "a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution. *White*, 137 S. Ct. at 552.

Because Plaintiff was a pretrial detainee at the time of the alleged incidents, any claim he has for excessive force arises under the Fourteenth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018). To establish an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show "that the force purposely or knowingly used against

5

him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *accord Edrei*, 892 F.3d at 536.

Several district courts in this Circuit have held, in the context of Fourth Amendment excessive force claims (i.e., claims relating to the use of excessive force in effecting arrests), that "verbal threats, combined with the brandishing of [a] weapon, could be unreasonable and therefore constitute excessive force." *See Merrill v. Schell*, 279 F. Supp. 3d 438, 444 (W.D.N.Y. 2017) (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 296 (S.D.N.Y. 2015)) (holding that officer's verbal threat and pointing his service weapon at plaintiff's head stated a constitutional claim where plaintiff arrestee was compliant, unarmed and handcuffed in a confined space); *Lilakos v. New York City*, No. 14 Civ. 5288, 2016 WL 5928674, at *6 (E.D.N.Y. Sept. 30, 2016) (denying motion to dismiss excessive force claim where officers screamed at plaintiff arrestee not to "[expletive] move" and "threatened to hurt [him] with his gun if he didn't stay on his knees"); *Marceline v. Delgado*, 2011 WL 2531081, at *7–9 (D. Conn. June 23, 2011) (denying summary judgment despite no physical contact when defendant police officer, while off duty, detained plaintiffs at gunpoint for a minor traffic violation).

But neither the Second Circuit nor Supreme Court has held -- as of now or 2016 when the conduct occurred -- that threatening words and behavior alone, without any physical contact, can constitute force for purposes of either the Fourth or Fourteenth Amendment.[2] Because the

---

[2] It is unlikely that the word "force" carries a different meaning under the Fourth and Fourteenth Amendments. *See Mills v. Fenger*, 216 F. App'x 7, 9 n.1 (2d Cir. 2006) (summary order) (citing a Fourteenth Amendment case, *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987), in discussing whether a "gunpoint death threat" could constitute excessive force under the Fourth Amendment); *cf. Edrei*, 892 F.3d at 542 ("Both *Parmley* and *Amnesty America* gave the defendants fair warning that the prohibition on excessive force [under the Fourteenth Amendment] applies to protesters. This is true even though both those cases arose under the Fourth Amendment."). *See generally Poe v. Leonard*, 282 F.3d 123, 137 (2d Cir. 2002) ("Although the Fourth Amendment cases are not on all fours with Poe's claim under the

6

unlawfulness of Bia's conduct was not "clearly established" at the time of the line-ups, Bia is protected under the doctrine of qualified immunity. *See, e.g.*, *Green v. City of Mount Vernon*, 96 F. Supp. 3d at 296 ("Though it is less clear whether pointing guns at children when effecting a search warrant related to narcotics constitutes excessive force, at the very least the Police Officer Defendants are entitled to immunity on this claim because . . . their conduct did not violate clearly established constitutional rights of which a reasonable person would have known."). Summary judgment is therefore granted with respect to the excessive force claim.[3]

   B.     **Free Exercise/Equal Protection Claims Against the City of New York**

Plaintiff raises a *Monell* claim, contending that the New York City Police Department maintains a policy pursuant to which only white, orthodox Jewish detainees are exempt from shaving their beards for purposes of line-ups. Plaintiff contends that this policy violates the Free Exercise Clause and Equal Protection Clause.

There are no material issues of disputed fact regarding the *Monell* claim. Although Plaintiff contends that Bia told him about the discriminatory policy, this single statement would be an insufficient basis for a reasonable jury to find that the policy exists. *See Patterson v. Cty.*

---

Fourteenth Amendment, they are instructive . . . ."); *accord Edrei*, 892 F.3d at 542. To the extent that the Fourth and Fourteenth Amendments differ in what quantum of force is considered "excessive," *see Edrei*, 892 F.3d at 533 (noting that "only the most egregious official conduct" gives rise to a claim under the Due Process Clause), this is accounted for by the use of a different legal standard and analytical framework. *Compare Edrei*, 892 F.3d at 537 (Fourteenth Amendment), *with Tracy v. Freshwater*, 623 F.3d 90, 96 (Fourth Amendment).
[3] In their reply, Defendants characterize the firearm allegation as "highly improbable" and state that "[a]lthough [P]laintiff filed a series of complaints with various state and city agencies following this incident, *he failed to mention the use of a firearm in all of them*." Plaintiff responds in his surreply that he referenced the firearm in a 2016 letter to the New York County District Attorney. Plaintiff contends that this raises a material issue of fact regarding his excessive force claim. While Plaintiff is correct that the involvement of a firearm appears to be a disputed fact, that does not change the ruling in the text above, which is based on the doctrine of qualified immunity.

*of Oneida, N.Y.*, 375 F.3d 206, 221–22 (2d Cir. 2004) (holding police department employee's conclusory statement that department had discriminatory policy insufficient to defeat summary judgment). *See generally Liberty Lobby, Inc.*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Nor has Plaintiff set forth any evidence that the alleged policy is "so persistent or widespread as to constitute a custom or usage with the force of law." *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (quotation marks omitted).

Plaintiff also contends that the City of New York has failed to train its police officers to safely execute shave orders. But to establish § 1983 liability based on a failure to train, a plaintiff must not only establish that "the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference," but must also "identify a specific deficiency in the city's training program" and show that such deficiency "is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391) (quotation marks omitted); *accord Velez v. City of New York*, No. 17 Civ. 9871, 2019 WL 3495642, at *6 (S.D.N.Y. Aug. 1, 2019). Plaintiff offers no evidence of a deficient training program, other than "the mere fact that the misconduct occurred in the first place." *Amnesty Am.*, 361 F.3d at 130. Accordingly, summary judgment is granted as to the *Monell* claims.

### C. Free Exercise/Equal Protection Claims Against Bia

Plaintiff also raises Free Exercise and Equal Protection claims against Bia. Plaintiff testified at his deposition that Bia repeatedly made racist and anti-Muslim comments, including

referring to Plaintiff's facial hair as a "Muslim terrorist beard."  Construing his submissions liberally, Plaintiff argues that Bia's decision to seek and enforce an order requiring Plaintiff to shave was motivated by discriminatory animus, in violation of the Equal Protection Clause.  *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 486 (S.D.N.Y. 2015) (holding that adverse action motivated by discriminatory animus raises equal protection claim).  Plaintiff's submissions also suggest an argument that Bia selectively sought a shave order on account of Plaintiff's religion, in violation of the Free Exercise Clause.  *See East End Eruv Assoc., Inc. v. Vill. of Westhampton Beach*, 828 F. Supp. 2d 526, 539 (E.D.N.Y. 2011) (holding that a Free Exercise claim can be established on a selective enforcement theory).

Bia is entitled to qualified immunity with respect to these claims.  No Second Circuit case law existing at the time of the May 11, 2016, line-up gave Bia notice that seeking and/or enforcing a legal and binding line-up order, duly-issued by a New York state court in the normal course, could constitute a violation of Plaintiff's constitutional rights.[4]  *See Gonzalez*, 728 F.3d at 154 (holding that, to defeat qualified immunity, the constitutional right at issue must be "clearly established").  Although a 2014 case denied a motion to dismiss a Free Exercise claim based on allegations that the plaintiff was forcibly shaved by a police officer, *see Lindsey v. Butler*, 43 F. Supp. 3d 317, 325 (S.D.N.Y. 2014), in that case, there had been no court order requiring the plaintiff to shave.  Summary judgment is granted with respect to the Equal Protection and Free Exercise claims asserted against Bia.

---

[4] The state court's first line-up order provided that "reasonable force may be used to compel defendant to participate in the line-up."  In discussing his Free Exercise and Equal Protection claims, Plaintiff notes that the state court's second line-up order did not expressly authorize Bia to use reasonable force to enforce the order.  While this is true, it does not change the conclusion that, at the time of the line-up, it was not clearly established that Bia's enforcement of the court order violated Plaintiff's constitutional rights.

9

### D. Deliberate Indifference

Plaintiff contends that Bia's refusal to provide Plaintiff with medical care for the cuts he sustained while shaving amounts to deliberate indifference. The Due Process Clause of the Fourteenth Amendment prohibits deliberate indifference to the medical needs of pretrial detainees. *See Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019). To establish a constitutional violation, a plaintiff must show (1) that the plaintiff had a "serious medical need" and (2) that the defendants "acted with deliberate indifference to such needs." *See id.* at 86.

No reasonable jury could find that the cuts Plaintiff sustained while shaving gave rise to a "serious medical need." *Id.* "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* "In determining whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, we consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Id.*

Plaintiff contends that he sustained serious physical injuries causing extreme physical and emotional pain, that he was prescribed painkillers and wound-care bandages and that he suffers from permanent facial scarring. But when Plaintiff was treated for his cuts the morning following the line-ups, the attending doctor prepared a report stating that Plaintiff had two "superficial scratches" -- one of which had healed, and the other which had almost healed -- and prescribed only ibuprofen tablets and an adhesive bandage. No reasonable jury could find that Plaintiff's cuts, caused by shaving and described by a doctor as "superficial," caused "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *See*

*id.* *See generally United Specialty Ins. Co. v. Premier Contracting of New York, Inc.*, 375 F. Supp. 3d 389, 395–96 (S.D.N.Y. 2019) ("[O]nce the movant has carried its 'initial burden . . . of demonstrating the absence of a genuine issue of material fact,' [the non-movant] 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 572, 585 n.10 (1986), and *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). Summary judgment is granted with respect to the deliberate indifference claim.

### E. Intentional Infliction of Emotional Distress

The Court declines to exercise supplemental jurisdiction over Plaintiff's state claim for intentional infliction of emotional distress. "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity -- the 'Cohill factors.'" *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *accord Collins v. Lindstrom*, No. 18 Civ. 6696, 2018 WL 6547054, at *2 (S.D.N.Y. Nov. 26, 2018). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Cohill*, 484 U.S. at 350 n.7); *accord Krechmer v. Tantaros*, No. 17-4061, 2018 WL 4044048, at *3 (2d Cir. Aug. 24, 2018); *see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) ("[F]ederal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment . . . ."); *accord Isienyi v. Interactive Data Corp.*, No. 16 Civ. 902, 2018 WL 1578173, at *7 (S.D.N.Y. Mar. 27, 2018). *See generally Cohen v. Postal*

*Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) ("[O]ur circuit takes a very strong position that state issues should be decided by state courts."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *accord Isienyi*, 2018 WL 1578173, at *8.

No exceptional circumstances justify retaining supplemental jurisdiction over Plaintiff's state claim. Notably, Plaintiff did not make clear that he intended to assert an intentional infliction of emotional distress claim until filing his opposition to Defendants' motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to send a copy of this Order to the pro se Plaintiff, close the motion at Docket No. 56 and close the case.

Dated: September 3, 2019
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　LORNA G. SCHOFIELD
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE